IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTHONY POLAK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:19-CV-2972-D |
| VS. | § | |
| | § | |
| STERILITE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

This suit brought under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, arises from a positive random drug test that resulted in the plaintiff's termination and from the defendant's failure to rehire the plaintiff. The court must decide whether the plaintiff has raised a genuine issue of material fact that precludes summary judgment on his discrimination and retaliation claims. Concluding that he has not, the court grants defendant's motion for summary judgment and dismisses this action with prejudice by judgment filed today.

I

Defendant Sterilite Corporation ("Sterilite") is a company that produces various plastic products using injection molding.[1] From September 2002 until April 2019, plaintiff

---

[1] In deciding Sterilite's motion for summary judgment, the court views the evidence in the light most favorable to Polak as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Anthony Polak ("Polak") worked at Sterilite's Ennis, Texas plant.  At the time of his termination, Polak was employed as an assistant supervisor.

Sterilite maintains a Substance Abuse Policy ("Policy") that applies to all employees. The Policy, *inter alia*, prohibits "[a]ny use of drugs which are illegal under federal or state law, whether on or off Sterilite time, if the use results in drugs being present in an employee's system while at work."  D. App. 55.  It provides for post-accident drug and alcohol testing, for testing "if there is a reasonable suspicion of employee impairment while on Sterilite's premises or during the hours of employment based on specific facts and rational[] inferences,"[2] and for "[r]andom testing, as allowed by state or local statute, at periodic intervals to maintain safety and productivity."  *Id.* at 56.

Under the heading "Testing Procedures," the Policy states that "Sterilite will use a variety of testing methods . . . [which] may include urinalysis, saliva, hair follicle and breath or blood alcohol," *id.*; that "urinalysis or saliva testing are the preferred methods of testing,"

_____

[2]Under the Policy,

> specific facts and rational[] inferences . . . may include, but are not limited to observations concerning the appearance, behavior, speech, or body odors of the employee.  For example, reasonable suspicion determinations may be indicated by, among other things, the smell of alcohol, decreased cognitive function, slurred speech, bloodshot eyes, pinpoint or dilated pupils, impairment of coordination, changes in personality, erratic behavior, disorganized speech patterns, and if the employee statement does not rationally explain what was observed.

D. App. 56.

- 2 -

*id.*; and that "Sterilite will use urinalysis to test for drug abuse," *id.* at 57.  In cases where saliva testing is used, the Policy provides:

> Sterilite at any time may utilize rapid oral testing swabs.  The Occupational Health Nurse will administer the test and collect the specimen following the guidelines in appendix A and submit presumptive the positive specimen samples and chain of custody forms to third party laboratory.  A third party service may also be utilized for saliva rapid testing.

*Id.*

Under the Policy, an employee who tests positive for illegal drugs "will be subject to disciplinary action, up to and including termination."  *Id.*  Nevertheless,

> [e]mployees are entitled, upon written request to Sterilite, to obtain a copy of their test results.  Employees are also entitled, upon request, to explain in a confidential setting their positive test results with a designated Sterilite representative.  An employee may request to have a confirmed positive saliva or urine sample retested by another certified lab at their own expense.

*Id.* at 58.

On March 26, 2019 Polak and five other employees were randomly selected for drug testing.  Sterilite used the saliva-testing method.  With a swab, Polak swabbed his own cheek and under on his tongue, placed the swab in a vial and sealed it, and placed the vial in an envelope that he also sealed.  Polak returned to his work following the drug test and continued to work until April 1, 2019.

Sterilite submitted Polak's saliva to Quest Diagnostics ("Quest"), a third-party lab, to perform an enzyme immunoassay (also referred to as a "rapid test").  Sterilite maintains

- 3 -

that, when the sample tested positive for THC[3] using the rapid test, Quest tested the sample again using gas chromatography and mass spectrometry to confirm the results.[4]

On March 31, 2019 Quest allegedly contacted one of Sterilite's Human Resources Managers, Ada Jack ("Jack"), and requested that Jack have Polak contact Quest's Medical Review Officer ("MRO").  Polak contacted the MRO, who informed Polak that his saliva sample had tested positive for THC.

The following day, Jack received Polak's positive drug test results and discussed them with him over the telephone.  Polak told Jack that he had not used marijuana in over 30 years. Polak requested to speak with a Sterilite representative about the positive test result, but no one whom he contacted responded.  Polak maintains that he was never given a copy of his positive test result.  Sterilite terminated Polak's employment on April 1, 2019, allegedly because Jack believed that Polak had violated the Policy.[5]

---

[3]Tetrahydrocannabinol.

[4]Polak contends that he was notified of only one test, not a confirmatory second test, and that, when he sought employment benefits, Sterilite did not offer evidence of a confirmatory second test.  Polak also objects under Fed. R. Evid. 801 and 403 and moves to strike Sterilite's evidence that it obtained a confirmatory test of Polak's saliva sample. Because the court does not rely on evidence of a confirmatory second test in granting Sterilite's motion for summary judgment, it denies Polak's motion to strike this evidence as moot.

[5]Polak objects to Sterilite's evidence that Polak violated the Policy and that his employment was terminated on that ground.  He maintains that this is improper lay opinion testimony that violates Fed. R. Evid. 701.  The court disagrees and overrules this objection.

Rule 701 provides:

> [i]f a witness is not testifying as an expert, testimony in the form

On April 5, 2019 Polak took a hair follicle drug test at LabCorp, a different third-party lab.  He sent the test results to Jack and to Sterilite's occupational health nurse, the Vice President of Human Resources, the Ennis facility plant manager, and the Sterilite corporate Human Resources Manager.  Sterilite maintains that Polak's April 5, 2019 test did not comply with the Policy and that Sterilite did not reinstate Polak upon receipt of the hair follicle test because Polak did not follow the proper procedures for obtaining a retest of a confirmed positive sample.

---

of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Jack, a Sterilite Human Resources Manager, and Richard Murphy ("Murphy"), Sterilite's Vice President of Human Resources, both testified on the basis of their personal knowledge that Sterilite terminated Polak's employment based on a belief that he had violated the Policy. Neither Jack's nor Murphy's testimony is prohibited by Rule 701 because each testified based on personal knowledge that this is the reason Sterilite terminated Polak's employment.  *See, e.g., Everett Fin., Inc. v. Primary Residential Mortg., Inc.*, 2018 WL 2441829, at *3 (N.D. Tex. May 31, 2018) (Fitzwater, J.) (Under Rule 701, "the witness must have personalized knowledge of the facts underlying the opinion and the opinion must have a rational connection to those facts." (citing *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003))).  Neither Jack nor Murphy was offering an opinion about why Sterilite terminated Polak's employment.

Nor does this testimony violate Fed. R. Evid. 1002.  Polak posits that the best evidence of the reason for Polak's termination is the Policy itself, which does "not even recogniz[e] termination as an option for a positive marijuana test, and [does not] dictat[e] termination for a positive drug test under a variety of circumstances."  P. Mot. Strike 2.  Polak appears, however, to misunderstand the best evidence rule.  Rule 1002 provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  Sterilite is not attempting to prove the content of the Policy; it is offering deposition testimony explaining why Sterilite terminated Polak's employment, which does not violate (or even implicate) Rule 1002.

- 5 -

After Polak exhausted his administrative remedies, he filed the instant suit against Sterilite.  In his amended complaint, he alleges claims under the ADA for discrimination "on the basis that he was regarded as disabled," Am. Compl. ¶ 11, and for retaliation.

Sterilite moves for summary judgment on all of Polak's claims.  Polak opposes the motion.  The court has heard oral argument.[6]

## II

When a party moves for summary judgment on claims on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if the nonmovant fails to meet his burden.  *Little*, 37 F.3d at 1076.

---

[6]Polak requested oral argument, which the court granted.

III

The court turns first to Polak's ADA discrimination claim.

A

The ADA mandates that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To prevail on his discrimination claim, Polak must present direct or circumstantial evidence that his disability or perceived disability was the reason for Sterilite's adverse employment action.  *See, e.g., Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).  "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case).  "If an inference is required for the evidence to be probative as to [defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct."  *Sandstad*, 309 F.3d at 897-98.

When a plaintiff does not present direct evidence of discrimination, the court applies the modified *McDonnell Douglas*[7] paradigm.  *See Seaman*, 179 F.3d at 300 (holding that *McDonnell Douglas* framework, which is used in Title VII cases, applies to ADA cases when

---

[7]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

- 7 -

only circumstantial evidence of discrimination is offered).  As modified, the *McDonnell Douglas* framework consists of three stages.  First, Polak must establish a prima facie case of discrimination, which "creates a presumption that [Sterilite] unlawfully discriminated against [him]."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  To establish a prima facie case of discrimination based on a disability under the ADA, Polak must show that (1) he suffers from a disability or is regarded as disabled; (2) he is qualified for the job despite the disability; (3) he was subjected to an adverse employment action due to his disability; and (4) he was replaced by a non-disabled person or treated less favorably than nondisabled employees.  *See, e.g., Milton v. Tex. Dep't of Crim. Justice*, 707 F.3d 570, 573 (5th Cir. 2013) (quoting *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995)).

Second, if Polak establishes a prima facie case, the burden shifts to Sterilite to articulate a legitimate, nondiscriminatory reason for the employment actions taken against him.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  Sterilite's burden is one of production, not proof, and involves no credibility assessments.  *See, e.g., West*, 330 F.3d at 385.

Third, if Sterilite meets its production burden, Polak must show that the legitimate reasons proffered by Sterilite "were not its true reasons, but were a pretext for discrimination."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (quoting *Burdine*, 450 U.S. at 253); *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615

- 8 -

(5th Cir. 2009).[8]  Therefore, to survive summary judgment, Polak must "offer sufficient evidence to create a genuine issue of material fact . . . that [Sterilite's] reason is not true, but is instead a pretext for discrimination." *Rachid v. Jack In The Box, Inc*., 376 F.3d 305, 312 (5th Cir. 2004) (internal quotation marks and citation omitted) (describing standard in context of age discrimination case).

"Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (alteration in original) (quoting *Burdine*, 450 U.S. at 253).

B

The court first considers Polak's argument that there is direct evidence of discrimination "since Defendant explicitly terminated him for a positive drug test result, representing, based on Defendant's drug testing policy, a perception of him as disabled . . . even though, under the circumstances, he was erroneously so regarded[.]" P. Br. 21.  Polak contends that his termination on the basis of a positive drug test constitutes direct evidence

---

[8]As this court has previously observed, it is unclear whether the mixed-motive alternative to rebutting a defendant-employer's proffered legitimate reason is still viable in ADA discrimination cases after the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.,* 557 U.S. 167, 175 (2009) (holding that mixed-motives theory is unavailable under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*.). *See Bennett v. Dall. Indep. Sch. Dist*., 936 F.Supp.2d 767, 776 n.6 (N.D. Tex. 2013) (Fitzwater, C.J.).  But the court need not decide in this case whether a mixed-motive argument is available under the ADA because, assuming *arguendo* that it is, Sterilite is still entitled to summary judgment.  *See infra* note 14.

- 9 -

of discrimination because the reason for the termination was tied directly to the Policy, "explicitly based, as it is, on Defendant's perception of disability associated with positive drug test results and thus related to the protected class of persons of whom Plaintiff was a member, those perceived to be disabled based upon the receipt of a positive drug test," *id.* at 22; because the termination based on a positive drug test was contemporaneous, not merely close in time; and because the justification for termination was given by the exclusive decisionmaker with respect to Polak's termination.

The court holds that Polak has not presented direct evidence of discrimination.  Polak has failed to produce any evidence that anyone at Sterilite regarded him as disabled or believed that he was substantially limited in any major life activity.  And for the reasons discussed below, *see infra* § III(C), given the undisputed evidence that Polak was not selected for reasonable suspicion drug testing, he cannot rely on the Policy's provisions relating to reasonable suspicion drug and alcohol testing to support his argument that he was regarded as disabled.  Polak's termination based on the results of a random drug test does not, under the circumstances, constitute direct evidence of discrimination.

C

Having concluded that Polak has not presented direct evidence of discrimination, the court next applies the *McDonnell Douglas* burden-shifting framework.  The court first considers whether Polak has established a prima facie case of discrimination under the ADA.

1

Sterilite maintains that Polak cannot establish an essential element of his prima facie

case: that he was regarded as disabled.

Polak responds, *inter alia*, that, under the 2008 amendments to the ADA, an employee need only demonstrate that he was subjected to an action prohibited by the ADA "because of actual or perceived physical or mental impairment regardless of whether the impairment limits or is perceived to limit a major life activity," P. Br. 25, and that he has submitted ample summary judgment evidence that Sterilite's Policy assumed the existence of an impairment substantially limiting him based on a positive drug test alone. Polak maintains that his denial of marijuana use and subsequent negative drug test raise a triable issue of fact as to his protected status under the ADA; that Sterilite has admitted that its Policy is based on a desire to avoid having employees who test positive remain working for it because Sterilite equates a positive drug test to a disability even if the employee denies using illegal drugs and the test result is a false positive; that Sterilite's representatives justify the Policy based on a fear that those using illegal drugs will be substantially impaired in major life activities or major bodily functions; and that the Policy "not only assumes, but treats, an employee receiving a positive test as disabled, and that is sufficient to call for a determination that [Polak] may pursue a claim of wrongful discriminatory termination precisely because he was terminated solely on the basis of a policy that regarded him as disabled," *id.* at 30.

Sterilite argues in reply that there is no evidence that Jack (the decisionmaker) "regarded" him as having any kind of impairment; that Polak's "regarded as" argument relies on the reasonable suspicion testing provision of the Policy, but that there is simply no basis to assume that because reasonable suspicion testing may have been indicated under the

Policy by any listed factors, Sterilite's decisionmakers believed that someone who was randomly selected for testing, and tested positive for marijuana, would in every instance have the reasonable suspicion factors on a non-transitory and non-minor basis; that, by Polak's own argument, "whatever issue was present when he tested positive for marijuana on March 26, 2019, was no longer present when he had a new sample tested ten days later [and] accordingly, any perceived disability would have been, by the ADA's definition, transitory," Reply 10; that to the extent Polak relies on the list of indicators for reasonable suspicion testing under the Policy, he does not allege which, if any, impairments Sterilite perceived him to have; and that all of the relevant testimony supports the fact that no one at Sterilite perceived or believed Polak to have any impairment whatsoever, nor did they believe him to be addicted to drugs.

2

The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"  42 U.S.C. § 12102(1).  Under the 2008 amendments to the ADA, an individual is "regarded as" disabled when he is perceived as having a physical or mental impairment, regardless of whether the impairment actually exists or is perceived to limit a major life activity.  *Id.* § 12102(3)(A).

Although the ADA excludes from the definition of qualified individual with a disability "any employee or applicant who is currently engaging in the illegal use of drugs," it does not exclude an individual who "is erroneously regarded as engaging in such use, but

is not engaging in such use."  42 U.S.C. § 12114(a), (b)(3).  The erroneous perception that

an employee is an illegal drug user, however, is to be treated like any other perception of a

disability, and is only to be considered a qualifying disability if the employer perceives the

employee to have a physical or mental impairment as a result.  *See, e.g., Vestal v. Heart of*

*CarDon, LLC*, 2018 WL 3008638, at *9 (S.D. Ind. June 15, 2018) ("[A]s the statutory text

and case law indicate, the erroneous perception of drug use is relevant only as an exception

to the rule that current illegal drug use is not a qualifying disability. [Plaintiff] must still

demonstrate that [her employer] regarded her as having an impairment due to drug usage.");

*Bailey v. Real Time Staffing Servs., Inc.*, 927 F.Supp.2d 490, 499 (W.D. Tenn. 2012) ("While

[an employee erroneously regarded as engaging in current drug use] is not excluded from the

protection of the ADA, an employee is not automatically protected or a 'qualified person

with a disability' when the employer makes such an erroneous determination[.]   The

employee must still satisfy the statutory definitions in order to proceed under the ADA."

(citations omitted)), *aff'd*, 543 Fed. Appx. 520 (6th Cir. 2013); *E.E.O.C. v. Exxon Corp.*, 973

F. Supp. 612, 613-14 (N.D. Tex. Aug. 11, 1997) (Sanders, J.) ("An individual who falls

under one of the subcategories of 42 U.S.C. § 12114(b) is not automatically a 'qualified

individual with a disability' for purposes of protection under the ADA.  Rather, plaintiffs

must prove they suffer from a 'disability' as that term is defined in [the statute]." (citations

omitted)).  As one district court explained,

- 13 -

> an erroneous belief about drug use will only be a qualifying
> disability if the employer regarded the perceived drug use as *an
> impairment* and took action against the employee because of that
> perceived impairment.  It is not enough that the employer
> perceived the employee to simply be an illegal drug user to
> receive ADA protection; perceiving someone as having an
> impairing substance abuse problem is very different from
> perceiving them to be a casual or recreational drug user.

*Bailey*, 927 F.Supp.2d at 499-500 (footnote and citations omitted).  In other words, the

erroneous perception that an employee is an illegal drug user is insufficient of itself to

establish a "disability" under the ADA.  The individual must also show that his employer

regarded him as having a physical or mental impairment due to his drug usage[9] and took

action against him because of that perceived impairment.

3

Polak has failed to adduce any evidence that anyone at Sterilite perceived that he had

a physical or mental impairment due to his drug use or terminated his employment based on

such a perception.  He maintains that Jack "was the exclusive decisionmaker with respect to

[his] termination," P. Br. 22, but he does not point to any proof, nor does he argue, that Jack

---

[9]Prior to the 2008 amendments, an employee had to demonstrate that the employer
perceived the drug use as substantially limiting a major life activity.  *See, e.g., Nielsen v.
Moroni Feed Co.*, 162 F.3d 604, 610 (10th Cir. 1998) ("[T]he erroneous perception of being
an illegal drug user is to be treated like any other perception of a disability, and is only to be
considered a qualifying disability if the employer perceives the disability to substantially
limit a major life activity.").  The 2008 amendments, however, broadened the "regarded as"
definition for disability under 42 U.S.C. § 12102(1)(C).  An employee need now demonstrate
only that he was subjected to an action prohibited by the ADA because of actual or perceived
physical or mental impairment, regardless of whether the impairment limits or is perceived
to limit a major life activity.  42 U.S.C. § 12102(3)(A).

ever perceived him to be physically or mentally impaired.  In fact, Jack testified during her deposition that Polak was randomly selected for a drug test and "was not test[ed] . . . for drug abuse," P. App. 116; that she did not think Polak was a marijuana user or marijuana abuser[10]; that although, in some instances, she had directed Sterilite employees to call the Employee Assistance Program for substance abuse, she did not direct Polak to do this; and that Polak was permitted to return to work after his drug test because "[i]t was a random drug test" and Jack "didn't have any reason to think that [Polak] would be unsafe," *id.* at 124.  The evidence on which Polak relies permits only the reasonable inference that Jack did not believe that Polak was physically or mentally impaired either before or after the random drug test and that her sole reason for terminating his employment was because she believed that he had received a positive drug screen for marijuana, in violation of the clear terms of the Policy.

Polak maintains that the Policy "equates a positive drug test to a disability (defined by Defendant itself both in its drug testing policy and through its witnesses to consist of the risk of having employees with a substantial impairment of major life activities and bodily functions)," P. Br. 28, and that Sterilite regarded Polak as disabled because the Policy assumes that an employee using marijuana is disabled.  *See id.* at 30 (arguing that the Policy "clearly not only assumes, but treats an employee receiving a positive test as disabled, and

---

[10]Polak objects to this evidence under Fed. R. Evid. 701 and 1002.  But whether Jack regarded Polak as a drug user or abuser is a fact question about which Jack has personal knowledge.  It is a question that is distinct from whether Jack had, and was offering, the opinion that Polak was in fact drug user or abuser.  The court therefore overrules Polak's objections.  *See supra* note 5.

- 15 -

that is sufficient to call for a determination that Plaintiff may pursue a claim of wrongful discriminatory termination precisely because he was terminated solely on the basis of a policy that regarded him as disabled."). The court disagrees that the Policy regards as "disabled" an employee who fails a random drug test.

The Policy states that its purpose is "to promote a healthy, safe and productive workplace for all employees." D. App. 55. To this end, the Policy prohibits, *inter alia*, "[a]ny use of drugs which are illegal under federal or state law, whether on or off Sterilite time, if the use results in drugs being present in an employee's system while at work." D. App. 55. The Policy explicitly permits drug testing "if there is a reasonable suspicion of employee impairment while on Sterilite's premises or during the hours of employment based on specific facts and rational[] inferences," including "observations concerning the appearance, behavior, speech, or body odors of the employee" or, for example, "the smell of alcohol, decreased cognitive function, slurred speech, bloodshot eyes, pinpoint or dilated pupils, impairment of coordination, changes in personality, erratic behavior, [or] disorganized speech patterns." *Id.* at 56. The Policy also permits random testing, which by its very nature is *not* based on reasonable suspicion of employee impairment. *Id.* It is undisputed that Polak was selected for random testing, not reasonable suspicion testing, and there is no evidence that anyone at Sterilite harbored "a reasonable suspicion" that Polak was impaired while on Sterilite's premises.

Polak contends that Sterilite, through its witnesses,[11] has admitted "that its entire drug testing policy is based on a desire to avoid having employees who test positive remaining working for it because it equates a positive drug test to a disability," and that Sterilite justifies the Policy "based precisely on its fear that those using illegal drugs will be substantially impaired in major life activities or major bodily functions, including neurologically and otherwise." P. Br. 28. The court again disagrees. Although, as described above, the Policy *does* provide for reasonable suspicion testing in the event that a Sterilite employee appears to be physically or mentally impaired as a result of using drugs, it also permits random testing "to maintain safety and productivity." D. App. 56. Sterilite's apparent conclusion that the presence of illegal drugs in an employee's system is inconsistent with its goal of maintaining safety and productivity does not, without more, support the reasonable finding that Sterilite's decisionmakers regarded Polak as having a physical or mental impairment as a result of his alleged drug use or that they terminated Polak's employment on this basis.

Accordingly, the court concludes that Polak has failed meet his prima facie burden with respect to the first element, i.e., that he was regarded as disabled.

---

[11]Murphy's deposition testimony does not support the reasonable finding that the Policy regarded Polak as disabled. Murphy testified that the presence of marijuana in an individual's system "can impair [him] in any number of ways," but he also stated that "a trace amount in the system would not necessarily equate to impairment," P. App. 149, and that Polak was tested for drugs on March 26, 2019 as "part of a random test." *Id.* at 150. Nothing in the cited portions of Murphy's deposition supports the reasonable finding that Murphy, Jack, or any other Sterilite employee regarded Polak as impaired.

D

Even assuming *arguendo* that Polak could make a prima facie showing with respect to his ADA discrimination claim, the court would nevertheless grant Sterilite's motion for summary judgment because Sterilite has met its production burden of articulating a legitimate, nondiscriminatory reason for Polak's termination, and Polak has not created a genuine issue of material fact on the issue of pretext.

1

Sterilite has adduced evidence of a legitimate, nondiscriminatory reason for terminating Polak's employment: that Polak failed a random drug test, in violation of the Policy. *See, e.g., Kitchen v. BASF*, 952 F.3d 247, 253 (5th Cir. 2020) ("apparent positive results of [plaintiff's] alcohol test and violation of company policy" constituted legitimate, nondiscriminatory reason for discharging plaintiff). Because Sterilite has met its burden of production, the burden shifts back to Polak to present evidence that would enable a reasonable trier of fact to find that Sterilite's reason is pretextual.

2

Polak maintains that there is a genuine issue of material fact at to whether Sterilite's stated basis for his termination is pretextual. He contends that his denial of the use of marijuana and the presentation of a negative drug test raise an issue of fact on the falsity of Sterilite's reason for his termination; that Sterilite's own multiple significant violations of the Policy support an inference of pretext; that the lack of documentation of any basis for Sterilite's departing from its own drug testing policy in regard to the testing method used

- 18 -

(saliva instead of urine), especially when hair follicle testing is conclusive, is additional evidence of pretext; that the speed with which a decision was made to terminate Polak's employment constitutes "effective predetermination of the issue of Plaintiff's termination based upon his being regarded as disabled," P. Br. 39; and that Sterilite's "non-communication" with Polak even after he sought to communicate regarding his positive test both before and after his termination "reflects that Defendant was not willing to stand behind the stated reason for termination or address it with him as required by the governing drug testing policy, and thereby constitutes additional evidence of pretext," *id.*

Sterilite argues in reply that Polak has failed to present any evidence that the decision to terminate his employment was motivated by unlawful discriminatory animus; that Polak's complaints about Sterilite's drug-testing process do not show discriminatory intent; that Polak has failed to provide any admissible scientific or medical evidence in support of his contention that the March 26, 2019 test returned a "false positive"; that evidence that Polak tested negative in a subsequent test is not evidence that his saliva sample taken ten days earlier was negative for discernible amounts of marijuana; that even if Polak's saliva test did return a false positive, the evidence consistently demonstrates that Sterilite believed that Polak had tested positive and its decision to terminate Polak's employment was based on that belief; and that Polak has not adduced any evidence that any employee of Sterilite ever expressed animus toward him or any disabled person and offers no evidence that any other employee (disabled or not) was ever permitted to remain employed under nearly identical circumstances.

3

It is undisputed that the Policy prohibits "[a]ny use of drugs which are illegal under federal or state law, whether on or off Sterilite time, if the use results in drugs being present in an employee's system while at work," D. App. 55; that under the Policy, any employee who tests positive for illegal drugs "*will be* subject to disciplinary action, *up to and including termination*," *id.* at 57 (emphasis added); and that Polak's March 26, 2019 random drug test returned a positive result.  It is also undisputed that Sterilite had a practice of terminating the employment of any employee who failed a drug test.[12]  Polak has failed to point to any evidence that would permit a reasonable trier of fact to find that Sterilite's proffered reason for terminating his employment—i.e., Jack's belief, based on the positive random drug test, that Polak had violated Sterilite's Policy—is not its real reason but is, instead, a pretext for disability discrimination.

Neither Polak's denial of marijuana use nor his presentation of a negative drug test creates a genuine issue of material fact on the issue of pretext.  "[U]nder the *McDonnell Douglas* framework, a plaintiff cannot prove that an employer's proffered reason is pretextual merely by disputing the truth of the underlying facts for that reason." *Haverda v. Hays Cty.*, 723 F.3d 586, 596 n.1 (5th Cir. 2013) (addressing retaliation); *see also, e.g.,*

---

[12]Polak objects under Rules 1002 and 403 to Jack's testimony that it was Sterilite's standard practice to terminate employees who tested positive for drugs.  For the reasons explained *supra* in footnotes 5 and 10, the court overrules the objection.  Neither Rule 1002 nor Rule 403 prohibits Sterilite from offering Jack's testimony, based on  personal knowledge, as evidence of Sterilite's practice with regard to Policy violations.

*Kitchen*, 952 F.3d at 253 ("The focus of the pretext inquiry is not whether the alcohol test was accurate but whether BASF reasonably believed its non-discriminatory reason for discharging Kitchen and then acted on that basis."); *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *9 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) ("The inquiry is not whether [the plaintiff] actually committed the alleged infraction, but whether [the employer] believed that he had and based its decision to discharge him on that belief" (citation omitted)), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644 (5th Cir. 2012).  Instead, "a plaintiff must offer evidence to support an inference that the employer had a [discriminatory] motive, not just an incorrect belief."  *Haverda*, 723 F.3d at 596 n.1.  Here, Polak merely disputes the facts underlying his termination.  He denies having used marijuana and presents evidence that an independent hair follicle test returned a negative result.  But a plaintiff's "self-serving statements that he did not commit [the underlying act] are insufficient to create a triable issue of fact[.]"  *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010).  Polak has failed to provide any evidence that would enable a reasonable trier of fact to find that Sterilite did not reasonably believe its non-discriminatory reason for discharging him.  *See Kitchen*, 952 F.3d at 253.

Nor does Sterilite's alleged violation of its own policy raise a genuine issue of material fact on the question of pretext.[13]  As a preliminary matter, the court disagrees that

_____

[13]Polak contends that Sterilite violated the Policy by failing to provide him the opportunity to raise an issue of the validity of the saliva testing method or evidence of tampering; by using a saliva test when the Policy dictates a urine test; by failing to obtain a confirmatory test after an initial rapid results positive test; by terminating Polak when the

Polak has adduced evidence sufficient to permit a reasonable jury to find that Sterilite violated the Policy with respect Polak's random drug test or termination.  Although the Policy states that "Sterilite will use urinalysis to test for drug *abuse*," D. App. 57 (emphasis added), it explicitly permits saliva testing where, as here, no drug abuse is suspected but, rather, the employee is randomly tested, *see id.* at 56 (providing that "Sterilite will use a variety of testing methods . . . [which] may include urinalysis, saliva, hair follicle and breath or blood alcohol," and that "urinalysis or saliva testing are the preferred methods of testing.").  The Policy also clearly permits the termination of any employee who tests positive for illegal drugs.  *See id.* at 57.  To the extent that Polak contends that he was not given a sufficient opportunity to challenge or explain his positive test results, the summary judgment evidence permits only the reasonable inference that Jack and Polak spoke over the telephone and in person regarding his test results; that Polak told Jack he had not used marijuana in over 30 years; and that Jack told Polak that he could challenge the results of his drug test by filling out a chain-of-custody form and calling the number on that form.  But even assuming *arguendo* that Sterilite failed to follow its own Policy with regard to Polak's random drug test or termination, such a failure, without more, would not enable a reasonable jury to find pretext.  *See, e.g., Davis v. RealPage, Inc.*, 2020 WL 1325201, at *13 (N.D. Tex. Mar. 20, 2020) (Fitzwater, J.) ("[A]ssuming *arguendo* that [the employer] failed to follow

---

Policy does not dictate termination; by failing to provide Polak a copy of his test result or testable sample of his saliva even after he requested a sample; and by not allowing Polak to explain in a confidential setting his positive test result.

its own procedures and did not document [the employee's] poor performance, such failures, without more, do not demonstrate pretext").

The only other evidence on which Polak relies to establish pretext is the close temporal proximity between the positive drug test result and his termination, and the fact that various upper-level employees of Sterilite refused to communicate with him after his termination. This evidence, however, is insufficient, without more, to create a genuine issue of material fact on the question of pretext. As explained above, "[t]he ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is . . . correct.'" *Reeves*, 530 U.S. at 146-47 (alteration in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524). "In other words, '[i]t is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id.* at 147 (alterations in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519). Here, not only has Polak failed to point to evidence that would permit a reasonable jury to find that Sterilite's proffered reason for its adverse employment action is pretextual, he has also failed to introduce evidence that would permit a reasonable jury to find the ultimate fact of discrimination based on physical or mental disability. *See, e.g., Bailey v. Real Time Staffing Servs., Inc.*, 543 Fed. Appx. 520, 524 (6th Cir. 2013) ("Even if the positive result was in fact false, an employer's reliance on an erroneous result does not create a claim under the ADA absent an independent showing that the real reason for the firing was a disability."). Polak has failed to adduce any evidence that any employee of

- 23 -

Sterilite even regarded him as disabled, much less that he was terminated on that basis.

Accordingly, the court grants Sterilite's motion for summary judgment dismissing Polak's ADA discrimination claim.[14]

IV

The court now turns to Polak's retaliation claim, which is based on Sterilite's alleged failure to rehire him after he was terminated.[15]

---

[14]Polak maintains that he can show a genuine fact issue as to discrimination via the mixed-motives alternative for overcoming Sterilite's proffered legitimate, nondiscriminatory reasons. He posits that "[g]iven the undisputed evidence that the drug testing policy of Defendant was based on perceived disability associated with a positive drug test, summary judgment is equally improper here given the availability of a [mixed-motives] theory of liability." P. Br. 43. The court disagrees.

Assuming that the mixed-motives argument is viable for an ADA discrimination claim, Polak has failed to point to evidence that would enable a reasonable jury to find that his disability was a motivating factor in any of Sterilite's alleged adverse employment actions. To be a motivating factor, discrimination "must actually play a role in the employer's decision making process and have a determinative influence on the outcome." *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (citation omitted). "Under a mixed-motive framework [the defendant-employer] can defend against liability by showing that it would have taken the same action in the absence of any alleged discriminatory animus." *Crouch v. J C Penney Corp.*, 337 Fed. Appx. 399, 402 (5th Cir. 2009) (per curiam); *see also Leach v. Mansfield*, 2010 WL 707382, at *5 (S.D. Tex. Feb. 24, 2010). Even assuming that a reasonable jury could find that Sterilite (either through its human resources employees or through the Policy) regarded Polak as disabled, Polak has failed to adduce sufficient evidence from which a reasonable jury could find that Sterilite would not have taken the same action, i.e., terminated his employment, based solely on the positive random drug test.

[15]Although Polak's response brief is somewhat unclear, his counsel clarified during oral argument that he is relying only on Sterilite's failure to rehire him—not his initial termination—as the basis for his retaliation claim.

- 24 -

A

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  Because Polak relies on circumstantial evidence[16] in support of his ADA retaliation claim, the court proceeds under the *McDonnell Douglas* burden-shifting analysis.  *See Miller v. Metrocare Servs.*, 2015 WL 477233, at *15 (N.D. Tex. Feb. 5, 2015) (Fitzwater, J.), *aff'd*, 809 F.3d 827 (5th Cir. 2016).  "To establish a prima facie case of retaliation under the ADA . . . a plaintiff must show that (1) [he] participated in an activity protected under the statute; (2) [his] employer took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the adverse action."  *Feist v. La. Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007); *Seaman*, 179 F.3d at 301).  "If the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.  After the employer states its reason, the

---

[16]Polak states in his brief that "[a]rguably, Plaintiff has direct evidence of retaliation in his favor, avoiding the need to establish a triable case of retaliation by circumstantial evidence, given Defendant's complete failure to respond to his efforts to have communications with representatives of Defendant to avoid termination contrary to his own practice and the practice of its representatives."  P. Br. 45.  The court disagrees.  Sterilite's failure to respond to Polak's post-termination communications does not constitute direct evidence of retaliation under the ADA because the trier of fact would be required to draw the inference that the failure to respond was based on retaliatory animus.

burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation," *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007) (internal citation omitted), which the employee accomplishes by showing that the adverse action would not have occurred "but for" the employer's retaliatory motive, *Seaman*, 179 F.3d at 301. To avoid summary judgment, the plaintiff must show "a conflict in substantial evidence" on the question whether the employer would not have taken the action "but for" the protected activity. *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (citation and internal quotation marks omitted).

## B

The court will assume *arguendo* that Polak has made a prima facie showing of retaliation based on Sterilite's alleged failure to re-hire him after he disputed the results of his random drug test. The burden of production therefore shifts to Sterilite to produce evidence of a legitimate, non-retaliatory reason for failing to reinstate Polak's employment or re-hiring him after his termination. Sterilite has satisfied this obligation by producing evidence that Polak did not make any demand for reinstatement or apply for a position after his termination. The burden now shifts to Polak to raise a fact issue on whether retaliation was the but-for cause of Sterilite's failure to re-hire him.

In Polak's brief, the entire pretext argument that he offers in support of his retaliation claim is this: "For the reasons stated in Section IV(D) in connection with Plaintiff's discrimination claim, Plaintiff's proof of pretext is also sufficient in the context of his retaliation claim." P. Br. 49. Section III (D), however, to which the court assumes Polak

intends to refer, addresses only the question of pretext with respect to Polak's *termination*. Polak does not address pretext with respect to what he acknowledged at oral argument is the basis for this claim: Sterilite's failure-to-rehire him. *See supra* note 15. And he certainly does not present sufficient evidence to enable a reasonable jury to find that the real reason Sterilite did not reinstate him after his termination is because he disputed the results of his positive drug test.[17] In fact, although Polak challenges Sterilite's argument that Polak never requested reinstatement or applied for a position—*see* P. Br. 43 ("Plaintiff offers summary judgment evidence that he sought to remain employed by communicating to numerous representatives that he wanted to 'resolve the issue' and remedy the situation created by his positive drug test, which could only mean retaining his employment.")—Polak adduces no evidence that, "but for" his disputing the results of his drug test, Sterilite would have re-hired him.[18]

Accordingly, because Polak has failed to raise a genuine issue of material fact on the question whether Sterilite's proffered reason for failing to rehire him (i.e., he did not apply

---

[17]The court assumes *arguendo* that Polak engaged in protected activity, as required to make out a prima facie case. The court expresses no opinion on whether Polak's conduct with respect to his positive drug test (i.e., telling Jack that he had not used marijuana in the past 30 years, and attempting to communicate with various Sterilite employees after his termination) constitutes "protected activity" under the ADA.

[18]To the extent that Polak also intends to bring an ADA *discrimination* claim based on Sterilite's failure to rehire him, this claim also fails for the reasons explained: i.e., Polak has failed to adduce any evidence that Sterilite's legitimate, nondiscriminatory reason for not re-hiring him (because he did not apply for any position or request reinstatement) is a pretext for disability discrimination.

for any position or request reinstatement) is pretextual, the court grants Sterilite's motion for summary judgment as to Polak's retaliation claim.

*   *   *

For the reasons explained, the court grants Sterilite's motion for summary judgment and dismisses this action with prejudice by judgment filed today.[19]

**SO ORDERED**.

May 4, 2021.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[19]Polak's January 29, 2021 motion to strike based on evidentiary objections in support of response to defendant's motion for summary judgment is denied in part on the merits and denied in part as moot for the reasons explained in this memorandum opinion and order.